Samuel H. Hofstadter, J.
The nonjudicial court personnel of the Supreme Court and Surrogate’s Court of this and the Second Departments bring this article 78 proceeding to establish their rights under chapter 492 of the Laws of 1961 and chapter 640 of the Laws of 1962.
For almost half a century, as trial lawyer and Trial Judge, I have labored in their midst, and have come to know many of them personally. I know of no group more competent, more dedicated, and more assiduous in serving the public and in promoting the cause of justice. I have therefore given anxious care to their contentions in this proceeding; and I have striven to the utmost to do equity within the boundaries of law which circumscribe my adjudication.
Since the process of decision is one which filters through his being, the Judge despairs of reaching Cardozo’s “ paradise of a justice which would disclose itself by tokens plainer and more commanding than its pale and glimmering reflections in one’s own mind.” For, as Bishop Berkely observed, a man cannot transcend his own mind. It is difficult, therefore, for the Judge to transcend his own individuality, innate elements of ■which are affection and solicitude for the members of his group.
To bridge the chasm, then, between predilection and obligation, he can honor the imperative of duty only by seeking external validation — not the exercise of mere logic in vacuo, but rather, a process conditioned by statute and precedent, in the context of intent and purpose disclosed by the history of the controversy. ‘ ‘ A page of history is worth a volume of logic,” said Holmes.
Matter of Stich v. Wagner (36 Misc 2d 51, affd. 18 A D 2d 454, affd. 14 N Y 2d 530) brought earlier by the Supreme Court *735 stenographers of the same Departments based on chapter 492 of the Laws of 1961, disposed of most of the issues raised here. Special Term (McGivern, J.) rejected as without merit respondents’ contention: that the members of the Board of Estimate were not proper parties to that proceeding; that chapter 492 did not apply to the counties composing the City of New York; that section 115 of the Civil Service Law, declaring the policy of the State to be to provide “ equal pay for equal work,” is not applicable. The act, Mr. Justice McGivern held, applies to all officers or employees of the judiciary and ‘ ‘ judicial officers paid solely by the Board of Estimate are covered to the same extent as judicial officers paid by the State Comptroller ”.
On a motion to punish respondents for contempt for failing to comply with the order of Mr. Justice McGivern, the respective salary formulas now urged by the petitioners in substantially the same form, were urged upon Mr. Justice Hecht. He found “ the contentions of the city are to be preferred.” He held it unnecessary, however, then to definitely decide the issue, and denied the motion on other grounds (Matter of Stick v. Wagner, N. Y. L. J., Aug. 8, 1964, p. 8, col. 8). That issue is here now.
Effective April 1, 1959, chapter 200 of the Laws of 1959 added subdivision 1 to section 130 of the Civil Service Law. Subdivision 1 established 38 grades for the positions in the competitive, noncompetitive and labor classes of the classified service of the State. Minimum and maximum salaries were fixed for each grade, together with annual increments. The section was made applicable to all State officers and employees other than, among others, those of the judiciary.
In 1961, salaries were increased by substituting a new subdivision 1 in section 130 (L. 1961, ch. 350), effective May 1, 1961. Again, officers and employees of the judiciary were excepted from the scope of the section. However, judicial employees were thereupon granted substantially equal increases by chapter 492 of the Laws of 1961, effective May 4, 1961.
The increase given judicial employees was not spelled out in dollars and cents but by reference to section 130 of the Civil Service Law. Taking the maximum salary in subdivision 1 as of April 30, 1961 most nearly equal to the compensation of the judicial employee, he was to receive the difference between that amount and the new maximum for the same grade which became effective on May 1, 1961. The additional compensation was to be “ assessed, apportioned and reim *736 bursed ” in the same manner as compensation otherwise payable to such employees.

May 4, 1961 to June 30, 1961

Petitioners were entitled to receive this increase starting May 4, 1961. The city failed to give petitioners any increase until July 1, 1961. Petitioners are therefore clearly entitled to the unpaid additional compensation for the intervening period.

July 1,1961 to June 30, 1962

Effective July 1, 1961, the beginning of the city’s fiscal year, increases to be paid by the city were mandated for petitioners by the appropriate Justices. Calculated as a percentage of each employee’s salary, the increase was not to aggregate more than $1,000. These increases have been paid by the city.
The basic dispute between the parties is whether this increase should be added to the State increase, as petitioners argue, or set off against the State increase, the employee getting whichever is higher, as respondents argue.
In his affidavit of July 1, 1964, submitted to Mr. Justice Hecht, Presiding Justice Botkin declared that it was the intention of the Appellate Division and the Administrative Board that the salaries fixed by them for the city’s fiscal years 1961-1962 to 1963-1964, ■ would be the final salaries for the period involved, to be added to the salary rates paid by the city during the preceding fiscal year; that it was not the intention that the increases for 1961-1962 be in addition to those required by chapter 492. The same views were expressed by Presiding Justice Beldóck in his affidavit also submitted to Judge Hecht. In this light, and upon a reasonable reading of chapter 492, the conclusion is irresistible that for the city’s fiscal year 1961-1962 petitioners are only entitled to the difference between what is due them under chapter 492 and what they actually received from the city.

July 1,1962 to July 31,1962

Additional increases to be paid by the city were mandated for petitioners by the appropriate Justices for the city’s fiscal year beginning July 1, 1962. As for the preceding fiscal year, these were percentage increases with a ceiling of $1,000.
As of August 1, 1962, a second State increase. took effect. For the month of July, 1962, then, petitioners should be paid any unpaid balance due them under chapter 492.

August 1, 1962 to June 30, 1963

The second State increase was accomplished by substituting an increased schedule in subdivision 1 of section 130 of the *737 Civil Service Law as of August 1, 1962 (L. 1962, cli. 469). The salaries of judicial employees were thereupon equalized by chapter 640 of the Laws of 1962 as of the same date, in much the same manner as in the preceding’ year.
Judge Botkin tells us, in the affidavit alluded to earlier, that when preparing the 1962 city increases, the subcommittee of the Judicial Conference, approved by its Administrative Board and formally transmitted by the State Administrator to the city’s fiscal authorities, 11 took special cognizance of the pay raise statutes here involved (Chapter 492 of the Laws of 1961 and Chapter 640 of the Laws of 1962), pointing out that the raises provided by those statutes for State-paid employees was a reason for providing similar treatment for employees of the courts paid by the City of New York, since it was assumed that these statutes did not apply to them of their own force.”
Judge Beldock put it that the intention was to provide salary increases not in addition to those required by the State statute 1 ‘ but as a substitute or alternative means of adjusting the remuneration of the employees paid in the first instance by the City.”
In this context, I hold that for the purposes of chapter 640 of the Laws of 1962, the salary of each petitioner on July 31, 1962, is the amount due him under chapter 492 of the Laws of 1961 or under the city increases effective July 1, 1961, whichever was higher. Under the mandate of chapter 640 of the Laws of 1962, on August 1, 1962, this compensation was increased by the difference between his salary on July 31, 1962 and the new maximum for the comparable grade of the classified service of the State. To the extent that such increased compensation has not been paid by the city, it remains due and owing to each petitioner.

July 1,1963 to date

As of July 1, 1963, additional city increases were provided petitioners by the appropriate governing bodies of the city. These, too, were percentage increases, not to aggregate more than $1,000.
By the time this third city raise was being negotiated (Matter of Stick v. Wagner, supra) had been affirmed by the Appellate Division, Third Department. Judge Botein states that when negotiating this raise it was the intention of the Administrative Board that should the Court of Appeals decide the litigation adversely to the city “ the employees would be paid the higher of the two amounts — either the salary on the basis *738 of State increases or on the basis of negotiated increases, but not a combination of the two.”
For the period beginning July 1, 1963, I find that petitioners are entitled to any unpaid part of their salary under chapter 640 as of August 1,1962, not reimbursed under the city increase which took effect on July 1, 1963.
We reach the city’s argument that the State statutes do not apply to the employees of the Surrogate’s Courts and did not apply to employees of the former County Courts and the Court of General Sessions before the consolidation of the courts.
The Surrogate’s Court is part of the State judicial system established by the Constitution (art. VI, § 13 [now new § 12]). Surrogates have expressly been held to be judicial officers of the State and the personnel of their courts State officers (Matter of Prendergast v. Cohalan, 101 Misc. 712, affd. 179 App. Div. 883, affd. 226 N. Y. 636; Ledwith v. Rosalsky, 244 N. Y. 406; Matter of La Rocca v. Flynn, 257 N. Y. 7; Matter of Kelly v. Commissioner of Records, 256 App. Div. 761). The constitutional (art. VI, §§ 11, 14) and statutory provision's (County Law, § 909; Judiciary Law, art. 7 [§§ 190-208]; §§ 276-281, 348-349, 354, 383-384; Code Crim. Pro., § 938) governing the former C'ounty Courts in the City of New York and the Court of General Sessions and the decided cases (Matter of Kreppein v. Downs, 272 App. Div. 452; Matter of Capozzoli v. Wagner, 208 Misc. 328; see, also, Olmsted v. Meahl, 219 N. Y. 270; Matter of Wingate v. McGoldrick, 279 N. Y. 246; Matter of Henderson v. La Guardia, 294 N. Y. 728) impel the same conclusion concerning these courts.
1‘ When performing duties for a State court an officer of that court is a State officer and is performing the duties of a State officer * * * The principal factors in determining the status of petitioners are the power of appointment and removal and the fixing of salaries by State officials. * * * Nor is the fact that petitioners are paid by the city * * * determinative.” (Matter of Shea v. Falk, 10 A D 2d 142, 144, affd. 8 N Y 2d 1071.)
Petitioners’ salaries are fixed by designated State officials and paid by the city upon their order or certification. Petitioners are State judicial employees.
The petition is accordingly granted to the extent indicated; and respondents are directed (Matter of Barkovich v. Beame, 44 Misc 2d 521) to pay petitioners the amounts found due them indicated above, with interest as provided by law.